August 7, 2023

The Honorable Richard M. Gergel
United States District Court
District of South Carolina
Charleston Division
P.O. Box 835
Charleston, SC 29402
843-579-2610
gergel_ecf@scd.uscourts.gov

      Re: <u>*In re: Aqueous Film-Forming Foam Products Liability Litigation*, MDL No. 2-18-mn-2873-RMG. This document relates to: *City of Camden et al. v. DuPont*, Case No. 2:23-cv-03230-RMG</u>

Dear Judge Gergel:

      By and through their Attorneys General, the People of the States of Arizona, California, Pennsylvania, Wisconsin, and the District of Columbia (collectively, "Sovereigns") respectfully submit this letter as amici curiae regarding certain Plaintiffs' Motion for Preliminary Approval of Class Settlement, for Certification of Settlement Class, and for Permission to Disseminate Class Notice ("Motion," or "Mot.")[1] which seeks preliminary approval of a proposed class settlement ("Settlement Agreement")[2] between the DuPont entity defendants[3] (collectively, "DuPont") and public water systems.

      As originally filed, the Settlement Agreement was deeply flawed. Among other things, it would have: (1) required class members to make opt-out decisions with no information about the amount of money they might receive from the Settlement Agreement; (2) asked the court to enjoin other PFAS lawsuits against DuPont—including those prosecuted by Sovereigns—even before final approval of the Settlement Agreement; (3) required agreement to a convoluted and conflicting claims-over provision that appeared to act as an indemnity; and (4) hamstrung Sovereigns' ability to recover PFAS remediation costs from DuPont. To its credit, DuPont negotiated with a large and bipartisan coalition of states and territories in an effort to address a number of that group's concerns. With assistance from the Court, which extended by one week the deadline for responding to the motion for preliminary approval, the parties were able to resolve these concerns. This

---

[1] *See* Dkt. 3393, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG (D.S.C. July 10, 2023).

[2] *See* Dkt. 3393-2, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG (D.S.C. July 3, 2023).

[3] The Chemours Company; The Chemours Company FC, LLC; DuPont de Nemours, Inc.; Corteva, Inc.; and E.I. DuPont de Nemours and Company n/k/a/ EIDP, Inc.

resolution is memorialized by the separately filed Consent Motion to Amend Exhibits to Motion for Preliminary Approval ("Consent Motion")[4].

While the Sovereigns appreciate the good faith cooperation of DuPont and the putative Class Counsel in reaching this resolution, they remain concerned with one critical aspect of the Settlement Agreement: the total amount of consideration DuPont has agreed to pay class members. That amount is set at approximately $1.185 billion ("Settlement Amount")—for *all* PFAS compounds used in *all* PFAS products. The Settlement Amount falls far short of what is needed to address the harm DuPont's products have caused public water systems and appears at odds with the value of the scope of release that would be required in exchange for participation in the Settlement Agreement.

To be clear, the Sovereigns do not oppose approval of the Settlement Agreement as modified by the Consent Motion. Indeed, they recognize that, compared to the proposed class action settlement between 3M and public water systems—which is currently pending before the Court and which a coalition of 22 bipartisan sovereigns recently opposed—the modified DuPont Settlement Agreement comes closer to the standards of fairness and reasonableness required under Federal Rule of Civil Procedure 23.

Because of this, the Sovereigns submit this letter to highlight the adequacy of DuPont's consideration under the Settlement Agreement and to make clear that the Settlement Agreement should not serve as a point of reference for future PFAS resolutions, particularly those involving the Sovereigns.[5] Several illustrative comparisons demonstrate the Settlement Amount overreaches in its scope—by covering non-AFFF products—and is insufficient to address the harm caused by DuPont's products.

*First*, the Settlement Agreement releases claims arising from or related to all PFAS in all products, not just AFFF products, which are the focus of the present litigation. For decades, DuPont mostly manufactured and sold non-AFFF PFAS products. But the $1.185 billion Settlement Amount does not fully account for DuPont's total PFAS liability because it only reflects DuPont's share of the AFFF market for a short window during the 2000s. Thus, the $1.185 billion Settlement Amount does not fully account for DuPont's liability.

In negotiating the Settlement Agreement, proposed class counsel and DuPont intended to strike a global resolution. Dkt. 3393-3, Declaration of Scott Summy ¶ 11. Yet, the negotiating parties considered only DuPont's share in the AFFF market—the smallest of DuPont's PFAS markets—and only for the limited timeframe of 2002 to 2014. *See* Dkt. 3393-4, Declaration of

---

[4] *See* Dkt. 3521, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873-RMG (D.S.C. August 7, 2023).

[5] Additionally, the Attorneys General have a weighty interest, recognized by Congress through the Class Action Fairness Act, in safeguarding all Sovereign citizens' interests as they relate to the Settlement Agreement. The Attorneys General recognizes that, because the Settlement Amount is as low as it is, ratepayers and taxpayers will be left to bear a substantial portion of the costs to clean up DuPont's PFAS from drinking water.

Michael London ¶¶ 26–27; Dkt. 3393-3, Declaration of Scott Summy ¶ 19; Mot. at 6. By contrast, DuPont's broader participation in the PFAS market began in "the 1950s," during which time, "the DuPont Entities [] developed, designed, formulated, manufactured, sold, transported, stored, loaded, mixed, applied and/or used PFAS alone or in end products that contain PFAS as an active ingredient, byproduct or degradation product." Mot. at 5. Furthermore, the market-share liability analysis does not reflect DuPont's relative culpability in developing numerous PFAS-containing products and understanding the chemicals' toxic effects well before other Defendants. Despite this knowledge, DuPont continued to sell PFAS-containing products to third parties and consumers without providing adequate notice or warning of the substantial risks PFAS pose to human health and the environment.

*Second*, a recent study by the American Water Works Association, a major membership organization that includes public water systems, predicts nationwide costs for PFAS regulatory compliance that dwarf the Settlement Amount. Because water utilities nationwide are unable to cover the full costs of drinking water monitoring and treatment, they will need to pass costs on to ratepayers—American residents and businesses. Indeed, for all public water systems across the United States, complying with the proposed federal maximum contaminant level ("MCL") for PFOA and PFOS would cost about $47.3 billion for capital costs *alone*.[6] For these systems, the combined capital, operating, and maintenance costs of complying with the proposed PFOA and PFOS MCL are projected to be about $5.2 billion per year.[7] If these systems are subject to state MCLs with more stringent requirements or are required to remove other PFAS, even bare-minimum compliance would cost many billions more.[8] And many public water systems may reasonably opt to reduce PFAS concentrations to levels below applicable MCLs to safeguard public health, incurring even greater costs. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105–07 (2d Cir. 2013) (quotations omitted) (recognizing that an MCL reflects contamination "so severe that it would be *illegal* to serve the water to the public," and holding under New York state law that a public water system may recover their costs of reducing drinking water contamination to levels below an applicable MCL).

*Third*, a recent study by the U.S. Geological Survey found that *at least* 45 percent of drinking water in the United States is PFAS-contaminated.[9] Assuming that a similar proportion of drinking water in California is PFAS-contaminated, the costs for public water systems in California alone to investigate, test, purchase additional real property to install treatment infrastructure, install that infrastructure, and operate and maintain that equipment for decades would easily dwarf the Settlement Amount.

---

[6] *See* Exhibit 1 at 28 tbl. 6-1. The right-most three columns of the table estimate the number of "Entry Points to the Distribution System" that are impacted by those PFAS, the per-entry-point capital costs, and the total cost for public water systems of various sizes.

[7] *See id.* at App'x A tbl. A-1.

[8] *See id.*

[9] *See* U.S. Geological Survey, *Tap Water Study Detects PFAS "Forever Chemicals" Across the United States* (July 5, 2023), https://perma.cc/7F9Q-JR72.

*Fourth*, as just one example, the California State Water Resources Control Board operates financial assistance programs that assist water systems with certain PFAS remediation costs. The State Water Board has already received 18 applications to that program, with a collective project cost of over $633 million.[10] And many thousands of California water systems have not even started testing for PFAS contamination.[11] Thus, in California alone, statewide costs to investigate, monitor, and treat PFAS in drinking water will reach untold billions of dollars.[12]

For the foregoing reasons, the Sovereigns respectfully request the Court's consideration of their concerns outlined in this letter as the Court reviews the Settlement Amount for preliminary approval purposes.

Dated: August 7, 2023                     Respectfully submitted,

**STATE OF ARIZONA**
**KRISTIN K. MAYES**
**Arizona Attorney General**
State of Arizona
*/s/ Curtis Cox*
Curtis Cox
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-7781
Email: Environmental@azag.gov

**THE PEOPLE OF THE STATE OF CALIFORNIA**
**ROB BONTA**
**Attorney General of California**
EDWARD H. OCHOA (SBN 144842)
Senior Assistant Attorney General
JEREMY M. BROWN (SBN 269159)
Supervising Deputy Attorney General
NICHOLAS G. CAMPINS (SBN 238022)
BRENDAN J. HUGHES (SBN 333690)
Deputy Attorneys General
1515 Clay Street, 20th Floor.
Oakland, CA 94612
Telephone: (510) 879-0801

---

[10] *See* Declaration of Christopher Stevens, filed in support of Subset of Sovereigns' Supplemental Opposition to Plaintiffs' Motion for Preliminary Approval of [3M] Class Settlement, for Certification of Settlement Class and for Permission to Disseminate Class Notice ("Stevens Declaration"), ¶ 6.

[11] *See* Declaration of Andrew Altevogt, filed in support of Subset of Sovereigns' Supplemental Opposition to Plaintiffs' Motion for Preliminary Approval of [3M] Class Settlement, for Certification of Settlement Class and for Permission to Disseminate Class Notice, ¶ 5.

[12] *See generally* Stevens Declaration, ¶ 6.

Fax: (510) 622-2270
Email: Brendan.Hughes@doj.ca.gov

*/s/ Brendan J. Hughes*
BRENDAN J. HUGES
Deputy Attorney General
Attorneys for the People of the State of California, ex rel. Rob Bonta, Attorney General of California

**DISTRICT OF COLUMBIA**
**BRIAN L. SCHWALB**
**Attorney General for the District of Columbia**
JENNIFER C. JONES
Deputy Attorney General Public Advocacy Division
ARGATONIA D. WEATHERINGTON
Chief, Social Justice Section
By: */s/ Wesley Rosenfeld*
WESLEY ROSENFELD
Assistant Attorney General
LAUREN CULLUM
Special Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 Sixth Street NW, 10th Floor
Washington, D.C. 20001
Tel: 202.368.2569
Email: wesley.rosenfeld1@dc.gov
Email: lauren.cullum@dc.gov

EDELSON PC
By: */s/ Jimmy Rock*
JIMMY ROCK
1255 Union St NE, 7th Floor
Washington, D.C. 20002
Tel: 202.270.4777

**COMMONWEALTH OF PENNSYLVANIA**
**MICHELLE A. HENRY**
**Attorney General**
*/s/ James A. Donahue, III*
James A. Donahue, III
First Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: 717-787-3391
Email: jdonahue@attorneygeneral.gov

**STATE OF WISCONSIN
JOSHUA L. KAUL
Attorney General of Wisconsin**
*/s/ Bradley J. Motl*
BRADLEY J. MOTL
Assistant Attorney General
State Bar #1074743 SARAH C. GEERS
Assistant Attorney General
State Bar #1066948
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
Tel: (608) 267-0505 (Motl)
Tel: (608) 266-3067 (Geers)
Fax: (608) 267-2778
Email: motlbj@doj.state.wi.us
Email: geerssc@doj.state.wi.us

**CERTIFICATE OF SERVICE**

  I certify that on August 7, 2023, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which shall send notice to all counsel of record.

Dated: August 7, 2023                  */s/ Brendan J. Hughes*
                                 BRENDAN J. HUGHES